6/2/21

United States District Court
Southern District of New York

_____

Boisey Caldwell

     Plaintiff                     Case No.  21-CV-_____

Against

Gerald M. Cohen; Jon L, Norinsbeg;
Stephen Neuwirth; Elinor C. Sutton et al
Quiana Smith-Williams; Rachel Seligman Weiss;
Suzanna Publicker Mattham and Danial Passeser     Misrepresentation has no statute of
Limitations

     Defendants

_____ _____

Please Take Notice that attached herein below is the Stipulation and Agreement of the matter
10-cv-4228 is fraud in which all of the above-named defendants Misrepresented me
fraudulently in their "class action" and they knew that they were denying me equal and
impartial justice under the law: whereas, I am not a member of their Class, because members
of the class had their cases dismissed for facial insufficiencies and other defects, while "I took
my cases to trial and won" this is the distinguishing characteristic about my case although I was
~~were~~ subjected to  Fourth Amendment violations  along with 999, 999 males of African descent
who were subjected to  Fourth Amendment violations and those attorneys mentioned above
that they are guilty of conduct which violates the constitution and they are falsely posing as
advocates who fraudulently stipulated and agreed to deny me equal and impartial justice under
the law.

Their conduct violates the constitution, their acts of Fraud and deceit: It "usually consist of
misrepresentation, concealment or nondisclosure of a material fact, or at least misleading
conduct, devices or contrivance" 234 f. Supp 201, 203 and 425 P. 2d 974, 978 see also generally
Model Penal Code § 224 See also deceit. cases (esp. when the conduct is willful) it may be a
crime. and its "intentional deception! Case 1:10-vc-04228 RWS is a matter of Fraud and
Misrepresentation...

Fraud or misrepresentation is the cause of action resulting from an intentional misrepresentation
of material fact that is intended to induce, and does induce, reliance by the plaintiff, which
causes financial injury to the plaintiff. See genrally Dan B. Dobbs, The Law of Torts § 470
(2000); Restatement (second) of Torts § 526. It is somewhat disfavored action, in the sense that it
oftend must be pleaded with particularity and is subject to a higher standard of proof, but there
still are plenty of cases in which lawyers are liable for fraud...

Fraud...:

Blacks law dictionary

Crime: An act that law makes punishable; the breach of a legal duty treated as the subject-matter of a criminal proceeding;

Criminal: Someone who is involving a crime; nature of a crime. 2. Of relating to, or involving part of the legal system that is concerned with crime, connected with the administration of penal Justice. 3. Wrong, dishonest and unacceptable.

Non-criminal: Someone who is not involved in a crime act.

Fraud/Fraudulent: A knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment. • Fraud is usu. A tort, but in some cases (esp. when the conduct is willful) it may be a crime.

Barron's Law Dictionary Steven H. Gifis

Crime: any act which the sovereign has deemed contrary to the public good: a wrong which government has determined is injurious to the public and hence prosecutable in a criminal proceeding... see 427 P. 2d 928, 931.

Criminal: one who has been convicted of a violation of the criminal laws; also, an adjective denotes "an act done with malicious intent, from an evil nature, or with a wrongful disposition to harm or injure the other i.e., plaintiff" 96 P 2d 588, 591.

Non-criminal: Someone who is not involving a criminal act.

Fraud/Fraudulent: intentional deception resulting in an injury to another. Elements of fraud are: a false and materiel misrepresentation made by one who either knows it is falsity or is ignorant of its truth; the makers intent that the representation be relied on by the plaintiff(s) and in a manner reasonably contemplated; the under the assumption and expectations of the plaintiffs ignorance of the falsity of representation; disdaining the plaintiff's rightful or justified reliance and misdirect this court to the proximate injury (they are many) to the plaintiff. See 310 D2d 262-267 It "usually consist of misrepresentation, concealment or nondisclosure of a material fact, or at least misleading conduct, devices or contrivance" 234 f. Supp 201, 203 and 425 P. 2d 974, 978 see also generally Model Penal Code § 224 See also deceit. cases (esp. when the conduct is willful) it may be a crime, and after all, anything half true is false. As an authority at least in some areas, and may act unless "such conduct violates the constitution".

Because "A lawyer shall not counsel a client to engage or 'assist a client in conduct that the lawyers know is criminal or fraudulent'" and:

The Stipulation and agreements not signed by the Justice Robert Sweet, who concluded that their class is overly inclusive and violates 23 (c) and they went ahead and violated 23 (b) for

Classes as you will see that they signed the agreement without the Judges consent, or approval the agreement is signed by Gerald M. Cohen; Jon L 233 Broadway Suite 1800 New York, NY 10279 (212) 374-9115; Norinsbeg 225 Broad way Suite 2700 New York NY 10007 (212) 791-5396; Stephen Neuwirth; Elinor C. Sutton 51 Madison Ave. 22nd Floor New York NY 10010: Quiana Smith-Williams; Rachel Seligman Weiss;

Suzanna Publicker Mattham and Danial Passeser of the Department of Law 100 Church Street New York, NY 10007: Should be punished for interfering with the courts ability to administer justice... See 310 D2d 262-267 It "usually consist of misrepresentation, concealment or nondisclosure of a material fact, or at least misleading conduct, devices or contrivance" 234 f. Supp 201, 203 and 425 P. 2d 974, 978 see also generally Model Penal Code § 224 See also deceit. cases (esp. when the conduct is willful) it may be a crime (): see also Wolfram § 2.2.1.


Where, That the material fact is that the defendants knew what they were doing, had a meeting on the matters because they were conspiring together making their agreements with a full understanding of what they were doing knowingly and intentionally they therefore violated all my rights to constitutional protection and disregarded my matters altogether and by doing so they essentially disdain the Courts order Justice Sweet did not sign their agreement because it is illegal. That on that fact, they have no comment. And these are my records herein below... Elements of fraud are: a false and materiel misrepresentation made by one who either knows it is falsity or is ignorant of its truth; this is where Gerald M. Cohen; Jon L, Norinsbeg; Stephen Neuwirth; Elinor C. Sutton: Quiana Smith-Williams; Rachel Seligman Weiss;

Suzanna Publicker Mattham and Danial Passeser relied on by the plaintiff (the Plaintiff and this court) and presented it in a manner reasonably contemplated; the factors are their reliance upon (the Plaintiff and the court) and the 999, 999 other plaintiffs' ignorance of the falsity of this malicious form of representation and its "intentional deception; and ignoring the plaintiff's rightful or justified reliance and proximate injury to the plaintiff. See 310 D2d 262-267 It "usually consist of misrepresentation, concealment or nondisclosure of a material fact, or at least misleading conduct, devices or contrivance" 234 f. Supp 201, 203 and 425 P. 2d 974, 978 see also generally Model Penal Code § 224 See also deceit. cases (esp. when the conduct is willful) it may be a crime. and its "intentional deception!


1. "A lawyer shall not partake in conduct that 'the lawyers know is criminal or fraudulent'."


The Erie Mandate states that "the Constitutional scheme and the rules of decision act is where the question become what law applies to the various aspects of that part of the case" See: 457 U.S. at 819 causation is concrete analysis linking the injury(The fact that Stipulation and agreement is not signed by the Justice Robert Sweet, who concluded that their class is overly inclusive and violates 23 (c) and they went ahead and violated 23 (b)(3) for Classes as you will see that they signed the agreement without the Judges consent, or approval and went into action as their agreement is signed by Gerald M. Cohen; Jon L 233 Broadway Suite 1800 New York, NY 10279

(212) 374-9115; Norinsbeg 225 Broad way Suite 2700 New York NY 10007 (212) 791-5396; Stephen Neuwirth; Elinor C. Sutton 51 Madison Ave. 22nd Floor New York NY 10010: Quiana Smith-Williams; Rachel Seligman Weiss; Suzanna Publicker Mattham and Danial Passeser of the Department of Law 100 Church Street New York, NY 10007: Should be punished for interfering with the courts ability to administer justice... See 310 D2d 262-267 It "usually consist of misrepresentation, concealment or nondisclosure of a material fact, or at least misleading conduct, devices or contrivance" 234 f. Supp 201, 203 and 425 P. 2d 974, 978 see also generally Model Penal Code § 224 See also deceit. cases (esp. when the conduct is willful) it may be a crime (): see also Wolfram § 2.2.1.) these facts shall remain undisputed this is along with the fact that I took my cases to trial as mentioned below I am the keeper of the Record's: The Record's that I have been keeping...are below...

October 8, 2015

The City of New York office of the Comptroller
1 Centre Street,
New York, New York 10007-2341

Ramsey Caldwell
25 Elliot Place
Bronx, New York 10452

Docket No. 2014sx70847

Falsely charged with Disorderly conduct          Court Action
PL 240.20                                         Charged a surcharge of $195.00

Date on or around 12/26/2014                      Judge Quattrochi V Part SAP 2

Appeal filed                                      January 26th, 2015

My personal injuries are many in that I am supposed to not be able to rationalize enough to see that I am being subjected to indifference in the name of the law, deprived thereby of the right to be free from oppressions like this:

- To date the Clerk of the Supreme Court of the State of New York, on behalf the New York Cities Appellate Term of the First Department acknowledge the notice of appeal being filed on January 26th, 2015 (see attached) however that matter has not been reviewed. And:

- I have been told that I am going east when in truth I have been going west, whereas, when the Appeal was filed I was supposed to be provided with prior persons papers to precede, etc. However:

- On September 21st, 2015 I wrote asking the clerk why has there been no decision made in this matter, and that the Poor person papers were very late.

- She sends me further wust when I think that I am being lead east indicating that needed to provide more of this, or of that.

- Whereas, I was infringed upon by the officer 6959 of the Bronx Criminal Court house here on 161st street in the Bronx, New York on or about August 20th, 2014 and this incident is on camera of the Bronx Criminal Court house here on 161st street in the Bronx, New York on or about August 20th, 2014

2.
3.

- Please see attached documents sent to the court pertaining to this matter which has to date gone east when in fact it should have heard and time is running out to file my claim therefore I do so herewith;
- Whereby I AM willing to settle this matter at the cost of $195,000,000.00 or they will never learn to treat people the way that they wish to be treat (they are the investors, the people of the State of New York who pays the courts to fill the prisons).

Thank you very much for your time and attention to this matter and until I receive the cost of $195,000,000.00 from the City on behalf of its injustices I shall not relent.

Sworn to before me this ___ day of October, 2015.

_____
Notary Public

The Imprisoned Light,

_____
Horsey Caldwell Pro-se

4.
5.
6.
7.

December 2, 2014

The City of New York office of the Comptroller
1 Centre Street,
New York, New York 10007-2341

Bosset Criswell
25 Shiel Place
Bronx, New York 10457

Docket No. 2015X012793

Charges: 221.05 720.03                                    Court Action:
         PL 740.20                                        Dismissed on Motion
submitted by me (See below) however it says that the Da submitted:   SEALED

                                        Judge Darken, A.      Part E
Date 11/04/2015

The injuries are many, although substantiating, keep reading and they will appear.

See attachments sent to his Album and to the Wall

There are many situations when being subject's, being projected against Nature's Right to Justice. Not being able for reasons unbeknownst, which nature says.

Yours in Asia...,

For the SAKE OF LIFE ON EARTH and the Children's, children we can settle this matter at the cost of $240.20 Million Dollars.

Thank you very much for your time and attention to this matter, and or this reason $240.20 Million Dollars shall remain.

The Imprisoned Light                                      Notary Public

Plaintiff                                                 Patricia Pope
                                                          Notary Public, State of New York

8.

6. Whereupon, Officer Badge #6959 came from her/him as described in the docs she was set in the initial attempt in appeal the Irrational where the matter is already explain and Quadrant should not have heard the matter where in the end he disdained my every...

7. Whereby - DO NOT AGREE WITH THEIR AGREEMENT; this is a Natural Right it is not opained onto me by no one except Nature, it is a natural right, and their REASONING THEN IS MALICIOUS AND IRRATIONAL to say the least, I doubt know what ground he thinks that I went to, yet - did so...

Wherefore, One of Sun appeals to court for Justice on behalf of the aforement shelf size of the UNNECESSARY USEAGES OF FORCE by officer Badge #6959.

Further,          there was nothing disorderly about my conduct as the cameras can and will easily
                  reveal

To the Clerk of the Court

I wish to appeal the matter 2014SX070849 which was heard by Quadrand who had already made an agreement with the Attorney who did not act in my favor although she appears as if she did - she only seemed...

Case Number 2014SX070849

Respectfully Submitted

*[signature]*
Pro-se                              That Misrepresenting Attorney did not tell me her name.

Sworn to before me this ___ day of January, 2015 by the Bailey Cudwell

_____
Notary Public

SALLY HERNANDO
Notary Public - State of New York
NO. 01HE6101155
Qualified in New York County
My Commission Expires 03/30/2019

Bronx County District Attorney
Adacent Bureau
198 E. 181 St.
Bronx, New York 10451

Bronx and Manhattan
Appellate Term, First Department
60 Centre Street
NY, NY 10007

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF Bronx

---

THE PEOPLE OF THE STATE OF NEW YORK
Respondent

against-

Boisey Caldwell
Defendant - Appellant

NOTICE OF APPEAL

Docket Number

2014SX070847

---

Sirs,

Please take notice that the defendant herein appeals to the Appellate Term of the Supreme Court of the State of New York, held in and for the First Judicial Dept., from the judgment convicting him/her on the 23 day of December 2014 of PL 240.20 Dis Con.

and sentencing him/her to Fine - $30°°, Surch - $95°°, CVAF $25°°

rendered in the Criminal Court of the City of New York, county of Bronx
by the Hon.                          on the 23 day of December, 2014

DATED:   County of Bronx
The   24 day of January, 2014

Yours,
Name   Boisey Caldwell
Address   25 Elliot Place
Bronx, NY 10452

To: District Attorney
County of Bronx

CRIMINAL COURT OF THE CITY OF NEW YORK.       CERTIFICATE OF DISPOSITION
COUNTY OF NEW YORK                            NUMBER: 488456

THE PEOPLE OF THE STATE OF NEW YORK
                                              DATE OF BIRTH: _____
                               ss

_____                    ARREST NUMBER: _____
Defendant.

__ FULTON PLACE _____                    DOCKET/CASE: _____
Address                                       DATE OF ARREST/ISSUE:

_____    ___   ___                SUMMONS NO:
City                 State  Zip

Docket Number: _____

PL ___ ___.___
Arraignment Charges

Case Disposition Information:

Date Disposition:                             FINAL                  PG _ _ _

NO FEE CERTIFICATION

__  GOVERNMENT AGENCY          __ COUNSEL ASSIGNED
__  NO RECORD OF ATTORNEY READILY AVAILABLE, DEFENDANT STATES COUNSEL WAS ASSIGNED
    SOURCE  ACCUSATORY INSTRUMENT    DOCKET BOOK/CRIMS   CRC5020(CRC5A51

    I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

_____                _____   PER: _____
CHIEF CLERK / COURT                               DATE

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT
          SEAL OVER THE SIGNATURE OF THE COURT OFFICIAL

pursuant to Section 160.50 of the CPL

They all know that I am not lawfully a member of their class action that was filed in 2010, and my cases started in 2014 as you will see below, I did go to trial their agreement is for cases that we dismissed and not even one of my cases were dismissed, each matter against the department of Law was taken to trial, none of the cases were dismissed according to their stipulated agreement which is Denys me equal and impartial justice under the law.

Please take further notice, that this is a matter arising under the Constitution: in violation of F.R.C.P. Rule 23(B)For (b)(3) Classes and § Section 1983 of the U.S.C.A. with full knowledge then these defendants committed a culpable wrong which results in unequal and what appears (it's only an appearance which is in no manner what it appears to be) and I never threated Elinor, nor do I know who she is I just told her that I am not a member of the class and that I am not going to cash this check, then I was arrested because it is not impartial justice and it's against the law their <u>Stipulation and Agreement</u> is in violation of  my rights under FRCP 23(c) and (b) and 68(e).:

I am asking this court to take action because:

A. On April 6th, 2014 I was stopped and frisked and given a ticket even though I did not commit a crime just like in the instant matter I have been denied equal and impartial justice: this is Discrimination because no attorney except those of <u>the Stinton Deal</u> took cases, not a single case but millions, or at least one million matters from 2010-2017and I file my case in 2017 they moved to dismiss 17-CV-7808 (JMF) while there is violation of equal protection of the law because I took my cases to trial and the court said he has dispositions because I am a person (which he doesn't know that I suffer from PTSD and I made statements like someone who does so) he ignored the dispositions although he had them as proof that my matters were not dismissed as in accordance with <u>the Stipulation and Agreement</u> of <u>the Stinton Deal.</u>  He found no cause for action in the end. Please see <u>the Stinton deal</u>, of the matter 10cv4228.

B. On the appeal defendants and unfurl, unfortunately: the court VEC agreed with their stating that "the plaintiff is not satisfied with his cut." in her opinion and she ignored the disposition from the Criminal Court for the Ticket's that I took to trial and won, however her being in agreement the defendants in their motion to dismiss that the plaintiff is appealing from and I am quoting from the motion to dismiss that was sent by(it's a show of malicious intentions from those words are from) Elinor Sutton et al = Quin Emanuel (stating "the plaintiff is not satisfied with his cut." And that "Elinor Sutton is the sole female") and that makes it seem that I know Elinor Sutton and I don't know any one of those cowards who actually used E. Sutton as a means to escape because "they know" that my cases are not in accordance with the stipulation and agree of the <u>Stinton Deal</u> and included it in their

class anyway For in the case of *Caldwell v. Texas*, Chief Justice Melville Fuller wrote on behalf of a unanimous Court as follows, regarding the Fourteenth Amendment: "the powers of the States in dealing with crime within their borders are not limited, but no State can deprive particular persons or classes of persons of equal and impartial justice under the law.":

C.  "At first blush the Courts insistence of poof of actual injury in a § 1983 case may seem the only defensible position. Afterall § 1983 provides a vehicle for private civil actions, and an overarching purpose of private civil actions is to provide plaintiff with compensation for injury. If plaintiff cannot produce evidence of injury, why should they recover anything? The message provision for nominal damages in procedural due process cases sends a message that the defendant committed a culpable wrong. Anything more than nominal damages is appropriate only to compensate for harm that the plaintiff actually suffered. Moreover, punitive damages are available for malicious deprivation of rights."

D.  Elinor Sutton filed a complaint and there was an arrest warrant issued because of it, this is why she is mentioned not because she is the sole female, because reality says that "they used Elinor Sutton as their means to escape justice, by putting her up to send me that malicious check and denying me equal justice under the law."

E.  Because my case was filed in 2017 for $453, 000, 000.00 and the attorney told the court who heard17-CV-7808 (JMF) that I was part of the class and then the class was decided in 2017 however the class was filed in 2010 and it denies me equal and impartial justice under the law because I took my cases to trail and their agreement is for cases that were dismissed forthwith without anyone having to appear at court. (please see the Stinton Deal of the matter 10cv4228) because the defendants they all made an agreement to get paid off of my suffering with Zachary Carter who the department of law retired because the Stipulation and agreement is not signed by Justice Robert Sweet who heard the matter, Zachary Carter got away and he is a former employee of the Department of law who conspired with the defendants to denied me equal and impartial justice under the law, this is a matter where they agreed with Zachary Carter of the Department of law to deny me equal justice under the law. I am not a member of the Class Action that they benefited from and I have been denied equal and impartial justice because of it in violation of FRCP 23(c)(b) and 68(e) and I suffered from five different incidents being subjected to the abuse of power of the department of law.

F.  "At first blush the Courts insistence of poof of actual injury in a § 1983 case
    may seem the only defensible position. Afterall § 1983 provides a vehicle for
    private civil actions, and an overarching purpose of private civil actions is to
    provide plaintiff with compensation for injury. If plaintiff cannot produce
    evidence of injury, why should they recover anything? The message provision
    for nominal damages in procedural due process cases sends a message that
    the defendant committed a culpable wrong. Anything more than nominal
    damages is appropriate only to compensate for harm that the plaintiff
    actually suffered. Moreover, punitive damages are available for malicious
    deprivation of rights."

While the law states that:

1.  That "no state can deprive particular persons or classes of persons of equal and
    impartial justice under the law: is an affirmative defense for the plaintiff herein.

2.  The Court explained that "[n]ot only does the word 'deprive' in the Due Process
    Clause connote more than a negligent act, but we should not 'open federal law suits
    where there is no affirmative abuse of power'" Daniels v. Williams 474 U.S. 327, 330
    (1986) quoting Parrot, 451 U.S. at 548-549;

3.  Because the defendants, they abused their power as attorneys and acted in violation
    of F.R.C.P Rule 23; particularly Rule 23(B)For (b)(3) Classes: while, In the case of
    *Caldwell v. Texas*, Chief Justice Melville Fuller wrote on behalf of a unanimous
    Court as follows, regarding the Fourteenth Amendment: "the powers of the States in
    dealing with crime within their borders are not limited, but no State can deprive
    particular persons or classes of persons of equal and impartial justice under the law."

4.  While, the Justice of the court Robert Sweet never signed their stipulation and
    agreement, however in his opinion he stated "the matter is overly inclusive and
    violates 23(c) of FRCP" in his opinion. And that is the reason for him not signing and
    he never sent the following under Rule 23(B)

    For (23(B)(b)(3) Classes:

    "The court must direct to the class members the best notice that is practicable
    under the circumstances, including individual notice to all member who can be
    identified through reasonable effort."

5.  F.R.C.P. Rule 23(B)For (b)(3) Classes.

For any class citified under Rule 23(b)(3), the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all member who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language (and I never heard from the court I only heard from the Defendants through their <u>Stipulation and Agreement</u> which violates equal and impartial justice under the law) that notice that the court must make to the class members the notice clearly and concisely stating in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney;
(v)that the court will exclude from the class any member who request exclusion;
(vi)the time and manner for requesting exclusion; and
(vii)the binding effect of a class judgement on members under Rule 23(c)(3)
(3) Judgement. Whether or not favorable to the class, the judgement in a class must;
(A)For any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and
(B) for any class certified under Rule 23(b)(3) include and specify or describe those to whom the Rule 23(c)(2) notice was not sent by the court nor was one directed to any member of the class, the option to opt out was denied, for "I am one who has requested exclusion", and who the court did not find to be class member and I was never given the opportunity as described in the whole of Rule 23(B)For (b)(3) Classes.
My case was filed in 2017 and the class was decided in 2017 however the class was filed in 2010 and it denies me equal and impartial justice under the law.

Please take further notice, that in the Constitutional Scheme and the Rules of Decision act that the question becomes: What law applies to the various aspects of this particular case? i.d. Taking notice, then of the fact that I went to trial and their agreement is about cases being thrown out while mine were won after trial instead. And:

See Erie 304 U.S. at 74-75 "thus" the court concluded, the doctrine (i.e., Their Stipulation and agreement) rendered impossible equal protection of the law Id at 75. They deprived me in violation of FRCP 23(c) 23(B): (b)(3) and 68(e) that:

6.  In Daniels v. Williams 474 U.S. 327, 330 (1986);

[n]ot only does the word 'deprive' in the Due Process Clause connote more than a negligent act, but we should not 'open federal law suits where there is no affirmative abuse of power'" Daniels v. Williams 474 U.S. 327, 330 (1986) quoting Parrot, 451 U.S. at 548-549;

The unrestrained power of the firm Quin Emanuel Urquhart & Sullivan

"The continued existence of a free and democratic society depends upon the recognition of the concept that justice is based upon the rule of law, grounded in respect for the dignity of the individual and the capacity of the individual, through reason, for enlightened self-government. Law so grounded makes justice possible, for only through such law does the dignity of the individual attain respect and protection. Without its individual rights become subject to unrestrained power, respect for law is destroyed and rational self-government is impossible."

And they have denied me equal protection by their actions, with Zachary Carter of the Department of law they had the attorneys Elinor Sutton send me a check for $150.00 and I never cashed that check. I did however call Ms. Sutton and she got me arrested and that is how I found out that the Stipulation and Agreement is not signed by the Judge.

7. And, I never threated Elinor, nor do I know who she is, I did find out however through investigation that she is one of the firm of attorneys responding to this matter that they are all are partners, they all work for the same law firm Quin Emanuel Urquhart & Sullivan and these are the same attorneys that make of the et al = all the rest, that is Elinor Sutton and all the rest would be the firm Quin Emanuel Urquhart & Sullivan and these are the same attorneys that make of the et al = all the rest, their names appear of their falsely posed Stipulation and Agreement to which I never ever agreed and they know that I did not agree, neither did Justice Sweet, he told them that their "class is overly inclusive." And the acted with full knowledge then these defendants committed a culpable wrong which results in unequal and what appears (it's only an appearance which is in no manner what it appears to be) because it is not impartial justice and it's against the law their Stipulation and Agreement is in violation of my rights under FRCP 23(c) and (b) and 68(e).:

8. The et al = Quin Emanuel and Zachary Carter of the Department of law Who Signed the Stipulation and Agreement because Zachary Carter of the Department of Law paid these attorney's off however, the document that is not signed by the Justice Robert Sweet, who heard the matter and he told them in his opinion "that the matter is overly inclusive" it violates FRCP 23 (c) is illegal. Because my cases were not dismissed like mentioned above and that makes the matter overly inclusive because to include my matter is inconsistent with their agreement. Please see the Stipulation and Agreement it is not signed by Justice Robert Sweet who heard the

matter and I wonder why that is, could it be because they justice of the court Robert Sweet stated "the matter is overly inclusive and violates 23(c) of FRCP".

9. See Smith V. Wade, 461 U.S. 30, 56 (1983) [holding punitive damages are available when an official "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." See 10cv4228 for the indifference, reckless or callousness when an official likened to Bloomberg, who hired Ray Kelly and then when he was fired and law suits were filed, against the City of New York, Department of law under the authority of Bill Bratton, stated these words "there's a Race issue in America" is many officials "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Like when they paid the defendant off to include my matter in their class action even though my matter was pending and that fact is that, I took my cases to trial and the stipulation and agreement is unlawful] it is not signed by Justice Robert Sweet, it is however signed by the Defendants.

10. The **four elements** that a plaintiff must prove to win a negligence suit are 1) Duty, 2) Breach, 3) **Cause**, and 4) Harm.

11. Accordingly, the absence of significant presumed damages substantially reduces § 1983's effectiveness in deterring City officials, and attorneys such as Zachary Carter of the department of law and the attorneys those involved herein from their obvious violations of federal law.

12. I am not a member of the Class and therefore I was denied equal protection of the law. Justice Sweet stated "the class is overly inclusive" because my case was filed in 2017 and they claimed cases from 2010-2017 denying me equal and impartial justice under the law.

The words "equal justice under law" paraphrase an earlier expression coined in 1891 by the Supreme Court. In the case of *Caldwell v. Texas*, Chief Justice Melville Fuller wrote on behalf of a unanimous Court as follows, regarding the Fourteenth Amendment: "the powers of the States in dealing with crime within their borders are not limited, but no State can deprive particular persons or classes of persons of equal and impartial justice under the law." The last seven words are summarized by the inscription on the U.S. Supreme Court building.

13. That there is a policy that the Department of law has a way of hiding that they are denying me equal protection of the law.

Discrimination is because no attorney except Stinton would take this matter and I AM Representing the Case my –self this is not to be confused the matter entitled 17-CV-7808 (JMF) where there is violation of equal protection of the law because my matters were not dismissed as in accordance with the Stipulation and Agreement of the Stinton Deal I am not a member of the Class legally.

14. I was denied protections under Rule 23(B)For (b)(3) Classes. and therefore, I was denied equal protection of the law just like in the matters herein because my case and the decision were filed in the same year 2017, and it is this that is what makes the matter overly inclusive besides the court never sent the notices mention in Rule 23(B)For (b)(3) Classes. And VEC really ignored the courts document that was stamped with these words "Acquitted after trail." See: 17-CV-7808 (JMF)'s opinion.

15. The Equal Protection Clause has been the subject of much debate, and inspired the well-known phrase "Equal Justice Under Law". This clause is the basis for *Brown v. Board of Education* (1954), the Supreme Court decision that helped to dismantle racial segregation (because segregation and discrimination are all racially motivated just like the violations of fourth Amendment protection in this matter is), and also the basis for many other decisions rejecting discrimination against, and bigotry towards, people having brown skin.

G. In the case of *Caldwell v. Texas*, Chief Justice Melville Fuller wrote on behalf of a unanimous Court as follows, regarding the Fourteenth Amendment: "the powers of the States in dealing with crime within their borders are not limited, but no State can deprive particular persons or classes of persons of equal and impartial justice under the law.".

H. That there is a policy that the Department of law has a way of hiding that they are denying me equal protection of the law the notice must be from the Court not the defendants and it must clearly and concisely state in plain, easily understood language was never sent to me as a member of the class from the court under Rule 23(b)(3), not the defendants.

Thank you for your time and attention to this matter.

Boisey Caldwell Pro-se

Thank you very much for your time and attention and accordingly I mailed a complete copy of the matters herein to the Defendants

Gerald M. Cohen; Jon L 233 Broadway Suite 1800 New York, NY 10279 (212) 374-9115; Norinsbeg 225 Broad way Suite 2700 New York NY 10007 (212) 791-5396; Stephen Neuwirth; Elinor C. Sutton 51 Madison Ave. 22nd Floor New York NY 10010: Quiana Smith-Williams; Rachel Seligman Weiss; Suzanna Publicker Mattham and Danial Passeser of the Department of Law 21WQ100 Church Street New York, NY 10007

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARIF STINSON, *et al.*, Individually and on Behalf of Others Similarly Situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>THE CITY OF NEW YORK, *et al.*,<br><br>          Defendants. | 10 Civ. 4228 (RWS) |

**STIPULATION AND PROPOSED PRELIMINARY APPROVAL ORDER**

Subject to approval by the United States District Court for the Southern District of New York (the "Court"), SHARIF STINSON, RYBURN WALKES, GARY SHAW, MICHAEL BENNETT, CHANEL MEAUSA, DAVID THOMPSON, JEREMY THAMES, LEANDER GRIFFIN, RICARDO JONES and VICTOR BRELAND (collectively "Class Representatives"), on behalf of the class previously certified by the Court of themselves and all other individuals who were issued Criminal Court summonses by THE NEW YORK CITY POLICE DEPARTMENT ("NYPD") that were later dismissed upon a judicial finding of facial or legal insufficiency by the court prior to trial, and whose C Summonses were issued without probable cause (the "Class"), represented by their attorneys, Cohen & Fitch LLP, The Law Office of Jon L. Norinsberg, PLLC and Quinn Emanuel Urquhart & Sullivan, LLP (collectively "Class Counsel"); and Defendants CITY OF NEW YORK and RAYMOND W. KELLY represented by their attorneys The Office of Corporation Counsel and Simpson Thatcher & Bartlett LLP (collectively, "Counsel for Defendants"), hereby enter this Stipulation in the litigation captioned *Stinson, et al. v. The City of New York, et. al.*, Case No. 10 Civ. 4228 (RWS) (the "Civil Action").

**WHEREAS,** on May 25, 2010, Plaintiffs filed this lawsuit ("Lawsuit") against the City of New York ("City") and Raymond W. Kelly (together with the City, "Defendants") alleging that pursuant to a pattern and practice the New York City Police Department (hereinafter "NYPD" or "Department") violated constitutional rights of the Class Members by, *inter alia*, issuing criminal summonses returnable to the Summons Part ("C-summonses") without probable cause in response to pressure to meet alleged quotas and that the NYPD failed to train, discipline, or supervise officers regarding their obligation not to issue summonses without a constitutional basis;

**WHEREAS,** Defendants deny the existence of such policies or practices;

**WHEREAS,** according to the New York State Office of Court Administration

("OCA") [1] the number of C-summonses issued by the NYPD that were docketed in New York City by year (no defectives included) from May 25, 2007 through December 31, 2015 are:

> May 25, 2007 through December 31, 2007:   298,140
> January 1, 2008 through December 31, 2008: 490,069
> January 1, 2009 through December 31, 2009: 520,295
> January 1, 2010 through December 31, 2010: 518,265
> January 1, 2011 through December 31, 2011: 485,303
> January 1, 2012 through December 31, 2012: 473,068
> January 1, 2013 through December 31, 2013: 426,709
> January 1, 2014 through December 31, 2014: 357,472
> January 1, 2015 through December 31, 2015: 294,683

WHEREAS, according to OCA, between May 25, 2007 and December 31, 2015, the number of docketed C-summonses that were dismissed for facial insufficiency from May 25, 2007 through December 31, 2015 are as follows:

> May 25, 2007 through December 31, 2007:   75,904
> January 1, 2008 through December 31, 2008: 128,513
> January 1, 2009 through December 31, 2009: 140,884
> January 1, 2010 through December 31, 2010: 120,279
> January 1, 2011 through December 31, 2011: 115,563
> January 1, 2012 through December 31, 2012: 110,068
> January 1, 2013 through December 31, 2013: 88,994
> January 1, 2014 through December 31, 2014: 70,057
> January 1, 2015 through December 31, 2015: 49,457

WHEREAS, the percentage of C-summonses that were docketed by the OCA (no defectives included) and dismissed for facial insufficiency compared to the total number of C-summonses that were docketed by the OCA (no defectives included) by year from May 25, 2007 through December 31, 2015 are:

> May 25, 2007 through December 31, 2007:   25%
> January 1, 2008 through December 31, 2008: 26%
> January 1, 2009 through December 31, 2009: 27%
> January 1, 2010 through December 31, 2010: 23%
> January 1, 2011 through December 31, 2011: 24%

---

[1] The NYPD makes no representations concerning the accuracy of the OCA's data.

2

> January 1, 2012 through December 31, 2012: 23%
> January 1, 2013 through December 31, 2013: 21%
> January 1, 2014 through December 31, 2014: 20%
> January 1, 2015 through December 31, 2015: 17%

**WHEREAS,** the parties have reached a settlement agreement and now desire to resolve the issues raised in this litigation, without further proceedings and without admitting any fault or liability; and

**WHEREAS,** the parties have engaged in discovery; and

**WHEREAS,** Defendants have represented to the Class that during the pendency of this litigation: (1) the NYPD has made changes to its policies and procedures; and (2) legislative enactments and/or intergovernmental agreements were passed which implicate the subject matter herein, including, by way of example, the following:

(1) On August 30, 2010, the Governor of New York signed into law S2956A (the "Quota Bill") which modified and expanded New York Labor Law 215-a to prohibit discrimination against or threatening of an employee for the failure to meet quotas for a ticket, summons, or arrest authorized by any general, special, or local law.

(2) In November 2010, the NYPD published Legal Bureau Bulletin, Vol. 40, No. 20 concerning the Quota Bill.

(3) On August 1, 2013, the Department revised Patrol Guide Section 205-38 "Investigation of Incidents of Retaliation Against Members of Service," to again reiterate that "it remains the written policy of the Department that retaliation against any Member of Service for voluntarily providing information regarding Misconduct and Corruption will not be tolerated."

3

(4) On August 12, 2013, Judge Shira Scheindlin of the Southern District of New York found the NYPD liable for a pattern and practice of racial profiling and unconstitutional stops and appointed a Federal Monitor pursuant to the Remedial Order in *Floyd v. City of New York* and *Davis v. City of New York.* Under the Federal Monitor, the NYPD has represented to the Class that it has developed new Patrol Guide procedures, and updated training and reference materials on investigative encounters. Additionally, Defendants have represented to the Class that the NYPD is in the process of developing a new robust system for evaluating officer performance.

(5) In April 2015, Mayor Bill de Blasio in conjunction with the New York State Unified Court System announced the "Justice Reboot" initiative. Mayor de Blasio stated that the initiative "is about rethinking the way we approach criminal justice in NYC." As part of Justice Reboot, the C-summons form was revised, in part, to reduce the number of C-summonses being dismissed for facial insufficiency and/or other defects. Defendants have represented to the Class that the revised C-summons form provides more room in the narrative section to allow officers to write more details about the incident for which the summons is issued, and also includes additional sections relating to Trespass, Disorderly Conduct, and Consumption of Alcohol in Public – the offenses for which a large percentage of C-summonses are issued – which are aimed at prompting an officer to include more detailed facts concerning his/her personal

observations. The City hopes that these changes will lead to further annual decreases in the number of C-summonses dismissed as facially insufficient.[2]

(6) In February of 2016, and again in June of 2016, the NYPD conducted training on Justice Reboot and the new C-summons form. Department personnel responsible for issuing C-summonses and their supervisors were advised that the narrative portion of the C-summonses must be fully complete and received additional training on the elements of the offenses of Trespass, Disorderly Conduct, and Consumption of Alcohol in Public. Defendants have made a representation to the Class that the NYPD anticipates that such training will be repeated, including as part of the Recruit Training Curriculum.

(7) On June 13, 2016, Mayor de Blasio signed the Criminal Justice Reform Act, which consists of eight bills that give the NYPD the ability to address certain quality of life offenses by issuing civil summonses, in lieu of C-summonses or custodial arrests. Defendants have represented to the Class that pursuant to Local Law 71 of 2016, the NYPD will provide its officers with guidance concerning when to use the civil summons and criminal enforcement options when addressing the specified offenses, which include open container, littering, public urination, many parks offenses and unreasonable noise. The Criminal Justice Reform Act further requires the NYPD to make such guidance publicly available by June 2017. Defendants have represented to the Class that the NYPD is in the process of developing procedures to timely bring itself into compliance with the requirements of The Criminal Justice Reform Act.

---

[2] According to OCA data, the percentage of C-summonses dismissed as facially insufficient has declined yearly since 2011.

(8) The NYPD voluntarily posts certain summons data on the NYPD website for 2007 to the present, broken down by precinct and offense charged. Additionally, pursuant to the Criminal Justice Reform Act, the NYPD will begin posting quarterly summons data broken down by offense charged, race, age, gender, borough, and precinct for civil and criminal summonses by November 1, 2017. The Department represents that it is already in compliance with its requirements under the Act to report data relative to Desk Appearance Tickets. As part of this Settlement Agreement, the NYPD will agree to also post information directing the public to OCA's website for information concerning the adjudication of C-summonses. The NYPD is exploring the feasibility of utilizing existing technology to link information provided by the OCA regarding C-summonses dismissed as facially insufficient with internal data identifying the summons-issuing officers, offenses charged, commands and boroughs to better identify dismissal trends, mitigate risk of dismissals for facial insufficiency, and foster constructive dialogue with OCA regarding uniformity and transparency in the court system.

(9) The NYPD's Deputy Commissioner of Legal Matters will make a confidential presentation to counsel for the Class regarding the changes to the performance evaluation system, which revoked Operations Order 40 - "Police Officer Performance Objectives."

**WHEREAS,** the NYPD intends to present the following pilots and/or ongoing projects at the Fairness Hearing:

(1) The City will make reasonable efforts to ensure that, within six months of the Court's final approval of the Settlement Agreement and Release, the NYPD will

send a Department-wide email and a FINEST message  (i) instructing all Members of Service that quotas and/or numeric performance goals that otherwise fall within the plain meaning of New York State Labor Law Section 215-a for enforcement activity are against Department policy and may not be implemented; (ii) advising supervisory personnel that they may be subject to disciplinary action if they implement such quotas and/or numeric performance goals for enforcement activity; (iii) instructing Members of Service that they should notify IAB if they believe that they have been threatened or retaliated against in relation to any such quota and/or numeric performance goal, including without limitation the failure to comply with or satisfy any quota and/or numeric performance goal.  The Department has revoked any bulletin, operations order or policy that is contrary to the above, and has ensured that such revocation was communicated via email to all members of service.  The City will make reasonable efforts to ensure that, within eighteen months of the court's final approval of the Settlement Agreement and Release, the foregoing content from the Department-wide email shall be a subject included in Recruit Training, that it will be the subject of a Department-wide in-service training for calendar year 2017, and will be incorporated into all promotional training for Sergeants, Lieutenants and Captains.

(2) As of 2016, allegations made by any Member of Service against executives in the rank of Captain or above regarding the existence of quotas and/or numeric performance goals will be investigated by the Internal Affairs Bureau as "M" or Misconduct cases and assigned to IAB Group 1 on a pilot basis, subject to a

continuing assessment of the allocation of IAB resources and the discretion of
the Police Commissioner pursuant to the City Charter.

(3) Within six months of the Court's final approval of the Settlement Agreement
and Release allegations made by any Member of Service against a Sergeant or
Lieutenant regarding the existence of quotas and/or numeric performance goals
will be investigated by the designated parent command Investigations Unit, as
opposed to the command that is the subject of the quota allegation.

(4) The City will make reasonable efforts to ensure that, within twelve months of
the Court's final approval of the Settlement Agreement and Release, the NYPD
will conduct a targeted internal review of all relevant training materials for
recruits, and all relevant promotional and all in-service training, to ensure
compliance in both form and substance with the Quota Bill.

(5) The City will make reasonable efforts to ensure that within three months of the
Court's final approval of the Settlement Agreement and Release, the NYPD will
make changes to its Patrol Guide and conduct training relative to the
distribution of "Contact Cards" bearing the officer's name, shield and
command, to be provided on demand.  Where no card is available, the officer
must provide his or her name, rank and command to any person upon request,
including the recipient of a C-summons.

**WHEREAS,** the Parties have engaged in settlement negotiations and discussions
before the Honorable John S. Martin (Retired), SDNY Mediator, over the course of three
separate mediations spanning a period of one year on August 5, 2015, August 4, 2016 and
August 22, 2016.

8

**NOW, THEREFORE**, it is hereby stipulated and agreed, by and between the undersigned, as follows:

**I.**    **DEFINITIONS**

The terms described below shall have the meanings defined in this Section wherever used in this Stipulation and Proposed Preliminary Approval Order, and for the purposes of this Stipulation and Proposed Preliminary Approval Order only.

1.1    "Bar Date" is the date established by the Court by which any presumptive Class Member who wishes to receive payment pursuant to this Stipulation must file his/her Claim Form(s).  The parties agree that this date should be 180 days from the Date of Class Notice.

1.2    "C Summons" means any process issued by any NYPD officer pursuant to New York Criminal Procedure Law § 130.10, which is returnable to a New York City Criminal Court ("Criminal Court").

1.3    The "Civil Action" means the litigation captioned Stinson, et al. v. City of New York, et al., Case No. 10 Civ. 4228, before Judge Robert W. Sweet in the United States District Court for the Southern District of New York.

1.4    "Claimant" means a Proposed Settlement Class Member who has submitted a Claim Form for review by the Claims Administrator.

1.5    "Claims Administrator" means the Claims Administrator appointed by the Court.

1.6    "Claim Form" means the form attached hereto as Exhibit A.

1.7    "Class Counsel" means the law firms of Cohen & Fitch LLP, The Law Office of Jon L. Norinsberg, PLLC and Quinn Emanuel Urquhart & Sullivan, LLP.

1.8    "Class Fund" means the amount to be paid by the City for all claims of Class Members, service awards to the Class Representatives, and administrative costs. That amount shall be up to $56,500,000.00 (Fifty-Six Million Five Hundred Thousand Dollars).

1.9    "Class Member" means any member of the Settlement Class.

1.10    "Class Period" means the period commencing on May 25, 2007, and ending on the date of entry of a Preliminary Approval Order.

1.11    "Class Representatives" means SHARIF STINSON, RYBURN WALKES, GARY SHAW, MICHAEL BENNETT, CHANEL MEAUSA, DAVID THOMPSON, JEREMY THAMES, LEANDER GRIFFIN, RICARDO JONES and VICTOR BRELAND.

1.12    "Counsel for Defendants" means the Office of Corporation Counsel and Simpson Thatcher & Bartlett LLP.

1.13    "Costs" are those costs incurred by Class Counsel in connection with the prosecution of this litigation, and separate and distinct from, and do not include, Class Counsel's attorney's fees. Costs also do not include any fees or expenses incurred by the Claims Administrator, or in connection with the dissemination of Notice, which Defendant City of New York agrees to fund separately and in addition to any payment to Class Counsel of attorneys' fees and costs.

1.14    The "Court" means the United States District Court for the Southern District of New York.

1.15    "Date of Class Notice" means the date when the Administrator first mails out the Claim Forms to the presumptive Class Members, which must occur within sixty (60) days of the Preliminary Approval Order or such other time as may be set by the Court.

1.16    "Defendants" means the City of New York and Raymond W. Kelly.

10

1.17    "Effective Date" means the date upon which all of the following have occurred: (1) entry of an Order by the Court granting Final Approval to this Stipulation and Proposed Preliminary Approval Order, approving attorneys' fees and costs, and dismissing the Civil Action with prejudice; and (2) the time for appeal of the Final Approval Order has expired, or if an appeal from the Final Approval Order, or any portion thereof, is taken, the appeal results in affirmance of the Court's Final Approval Order of the Stipulation and Proposed Preliminary Approval Order.

1.18    "Eligible Claimant" means a Class Member who has submitted a timely and complete Claim Form regarding an Eligible C Summons to the Claims Administrator and whose claim is not otherwise barred for the reasons set forth in the Claim Form.

1.19    "Eligible C Summons" means a C Summons issued by an NYPD officer, from the start of the class period, May 25, 2007, through [Preliminary Approval Date], which was dismissed by the Criminal Court for facial or legal insufficiency and lacked probable cause.

1.20    "Final Approval Order" means an Order by the Court, after a fairness hearing, granting Final Approval to this Stipulation and Proposed Preliminary Approval Order, approving Class Counsel's fees and costs, approving Service Award Payments, and dismissing the Civil Action with prejudice;

1.21    "Final Approval Date" means the date of entry by the Court of the Final Approval Order.

1.22    "Notice of Class Action Settlement" means the notice approved by the Court for dissemination to Class Members by the means approved by the Court.

1.23 "NYPD Officer" means any agent or employee of the New York City Police Department authorized with powers designated by New York Criminal Procedure Law § 2.20.

1.24 "Opt-Out" is any potential Class Member who files a timely request to be excluded from the Class.

1.25 "Parties" means the Class and Defendants.

1.26 "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

1.27 "Preliminary Approval Order" means the Order entered by the Court preliminarily approving this Stipulation, approving Class Counsel's fees and costs, approving the Service Award Payments, scheduling a fairness hearing, and approving a plan of notice to the Class.

1.28 "Released Claims" means any and all past or present claims or causes of action (including any suits, petitions, demands or other claims in law, equity or arbitration), and any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, whether class or individual in nature, including both known claims and Unknown Claims, asserted or unasserted, for monetary and non-monetary relief (including without limitation attorneys' fees, costs or disbursements incurred by the Class Representatives and/or the Class or any Class Member in connection with or related to the Civil Action), that were or could have been asserted by the Class Representatives and/or any Class Member against the Defendants and any of their parents, subsidiaries, affiliates, predecessors, successors and/or assigns and in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privies and insurers (collectively defined

12

as the "Released Parties"), based upon or arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Civil Action, including any and all claims asserted in the original and subsequently amended complaints filed in the Civil Action. This Release does not include or cover any actions or omissions occurring after the Preliminary Approval Date, nor does it include or cover any claims stemming from any certified class action, other than this Civil Action in which a Class Representative or Class Member in this Civil Action already is a member of the class.

1.29    "Released Parties" means any and all Defendants, namely the City of New York and Raymond W. Kelly, and any of their parents, subsidiaries, affiliates, predecessors, successors and/or assigns and in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privies and insurers.

1.30    "Settlement Administration Expenses" means expenses incurred by the Claims Administrator in connection with the implementation and administration of, and dissemination of notice, and processing of claims pursuant to this Stipulation and Proposed Preliminary Approval Order.

1.31    "Stipulation and Proposed Preliminary Approval Order" means this Stipulation and Proposed Preliminary Approval Order and all Exhibits attached hereto.

1.32    "Settlement Class" is defined as the Class previously certified by the Court in the Civil Action, comprising the Class Representatives and all other individuals who were issued C Summonses by the NYPD that were later dismissed upon a judicial finding of facial or legal insufficiency by the court prior to trial, and whose C Summonses were issued without probable cause during the Class Period. Individuals are excluded from the

Class if between the date they received an Eligible C Summons and the date of the entry of the Preliminary District Court Approval, they entered into individual releases as part of individual agreements with the City that did not carve out an exception for this Civil Action. A claim is also excluded if it concerns an Eligible C Summons that was previously the subject of a lawsuit against the City of New York and/or individual NYPD officers and the individual named in the summons obtained recovery in that lawsuit for claims relating to that Eligible C Summons following motion practice or trial.

1.33    "Summons Incident" means an encounter between a Class Member and a member of the NYPD in which the Class Member received at least one Eligible C Summons.

1.34    "Unknown Claims" means any and all Released Claims which any Class Representative or Class Member does not know or suspect to exist in their favor at the time of the release of the Released Parties, which if known by them might have affected their decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the end of the claims period, the Class Representatives and Class Members shall waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law with respect to Unknown Claim. The Parties acknowledge, and all Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was bargained for and was a material element of the Settlement.

## II.    MUTUAL FULL COOPERATION

2.1    The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Stipulation and Proposed Preliminary

14

Approval Order, and exercise good faith efforts to accomplish the terms and conditions of this Stipulation and Proposed Preliminary Approval Order.

### III.    UNSEALING OF CRIMINAL COURT SUMMONSES

3.1    Upon the request of Counsel for Defendants and/or Class Counsel, the New York State Office of Court Administration shall provide the parties with any and all information and documentation pertaining to C Summonses dismissed as facially or legally insufficient, and sealed pursuant to New York Criminal Procedure Law ("NYC PL") §§ 160.50 and/or 160.55, from May 25, 2007 until the Preliminary Approval Date. Counsel for Defendants, the NYPD, and Class Counsel, shall only use the information and/or documents received from OCA pursuant to this paragraph for purposes of implementing this Stipulation and Proposed Preliminary Approval Order.

3.2    Upon the request of Counsel for Defendants, the New York City Police Department shall provide said counsel with specific requested information and documentation pertaining to C Summonses dismissed as facially or legally insufficient, and sealed by operation of NYC PL §§ 160.50 and/or 160.55, from May 25, 2007 until the Preliminary Approval Date. Neither Counsel for Defendants nor Class Counsel shall make any use of that information and document except solely for purposes of implementing this Stipulation and Proposed Preliminary Approval Order.

### IV.    RELEASES

4.1.    Upon the Effective Date of this Stipulation and Proposed Preliminary Approval Order, in consideration for the agreements by the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all Class Representative and Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release, remise and

15

forever discharge the Released Parties (as defined above) from each and every Released Claim, and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any of the Released Parties. Unless a Class Member opts out of the Settlement pursuant to Section 7.22 below, this Release shall apply whether or not such Class Member has executed and delivered a Claim Form or otherwise actively participated in the Settlement.

      4.2.    Every Class Member, except for those who Opt-Out pursuant to Section 7.22 below, shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed the Released Claims, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.

      4.3.    The Parties and Class Members acknowledge that the covenants and promises made by Defendants herein constitute adequate consideration in exchange for the Released Claims.

      4.4.    Nothing in this Stipulation and Proposed Preliminary Approval Order shall be construed to bar any claims of Class Representative or Class Members based on or arising out of events occurring after the date of the Preliminary Approval Order. Nor shall anything in this Stipulation and Proposed Preliminary Approval Order be construed to bar any claims by Class Representatives or Class Members based on or arising out of claims in any certified class action, other than this Civil Action, in which the Class Representative or Class Member already is a member of the certified class.

**V.**      **<u>SETTLEMENT BENEFITS</u>**

      5.1    Subject to Court approval, the parties have agreed to Settlement Benefits of up to Seventy-Five Million Dollars ($75,000,000.00), comprising (i) the payment of up to

16

Fifty-Six Million Five Hundred Thousand Dollars ($56,500,000.00) to the Class, which represents the Class Fund, and (ii) the payment of up to Eighteen Million Five Hundred Thousand Dollars ($18,500,000.00), which represents the separately agreed upon attorney's fees (collectively the "Settlement Benefits").   No later than forty-five (45) calendar days after the Effective Date, Defendant the City of New York shall cause to be deposited, in an interest bearing account as set forth in paragraph 5.2 below, the Settlement Benefits in the amount approved by the Court in the Final Approval Order.

5.2     The Settlement Benefits shall be maintained in an interest bearing bank account managed by the Claims Administrator under the supervision of Class Counsel. The Office of the Corporation Counsel shall identify an attorney to be provided monthly reports from the Claims Administrator on the status of the Settlement Fund Account.

5.3     The Claims Administrator shall distribute the Settlement Benefits pursuant to the provisions below, and on the time schedule described herein and pursuant to any orders of the Court.

5.4     In the event that the Settlement Benefits are not completely distributed for any reason, any and all remaining funds shall revert back to the City. The Claims Administrator shall provide, by wire transfer, the amount to be reverted to the City no later than twenty (20) business days after the distribution of the settlement monies described in Section 7.28 below. In addition, within one (1) year and fifteen (15) business days from the date of distribution of the settlement checks described in Section 7.28 below, the Claims Administrator shall provide to the City, by wire transfer, the amount of any settlement checks not paid from the Class Fund Account as a result of any Class Representative's or Class Member's failure to cash the check within one (1) year.

17

## VI.   ATTORNEYS' FEES AND EXPENSES, ADMINISTRATIVE EXPENSES AND SERVICE AWARD PAYMENTS

A.   Attorneys' Fees and Expenses.

6.1     Pursuant to Fed. R. Civ. P. 23(h), Class Counsel shall apply for reasonable attorneys' fees and expenses incurred by Class Counsel.

6.2     Defendants have agreed to pay Class Counsel $18,500,000.00 for attorneys' fees and Costs, subject to Court approval.  Defendants will not object to a motion by Class Counsel for attorney's fees and Costs of $18,500,000.00.

6.3     No later than fifty (50) calendar days after the Effective Date, the Claims Administrator will pay from the Settlement Benefits the Class Counsel attorneys' fees and Costs approved by the Court. Prior to the payment of attorneys' fees and expenses, Class Counsel will provide the Claims Administrator with Tax Payer Identification Numbers for Class Counsel and executed Form W-9s. Form 1099s shall be provided to Class Counsel for the payments made to Class Counsel.

B.   Administrative Expenses.

6.4     No later than fourteen (14) days after the Preliminary Approval Order, the City shall cause to be deposited into a bank account designated by the Claims Administrator an amount equal to the amount approved by the District Court for payment to the Claims Administrator to cover the costs of Notice agreed to by the Parties and/or ordered by the Court, except that the total of said funds shall not exceed Six Hundred Thousand Dollars ($600,000.00). Any such payment shall be debited against the Class Fund.  The Claims Administrator will submit monthly bills to the Parties and may pay itself from these funds in accordance with its bill provided the Parties do not object to the bill within thirty (30) days of the receipt of the monthly bill.

18

C.      Service Award Payments

6.5     Subject to Court approval, the Claims Administrator will pay from the Settlement Benefits $15,000 to each Class Representative in recognition of the time and energy that each has devoted to litigating this lawsuit, and his or her willingness to serve as a representative of the Class (collectively "Service Award Payments"). This amount shall be in addition to whatever Settlement Payment each Class Representative shall receive as a Class Member.

## VII.    INDIVIDUAL SETTLEMENT PAYMENTS TO CLASS MEMBERS AND CLAIMS PROCESS

A.      Individual Settlement Payments

7.1     Settlement payments to Class Members and Class Representatives will be in settlement of all their claims.

7.2     The amount in the Class Fund remaining after payments of Court-approved Settlement Administration Expenses and Service Award Payments, as provided herein, shall be proportionately divided, on a per summons basis, among all Class Representatives and Class Members submitting claim forms deemed valid by the Claims Administrator, provided that the maximum compensation per summons shall not exceed $150.00 (One Hundred Fifty Dollars) (the amounts paid to Class Representatives and Class Members pursuant to this paragraph being the "Individual Settlement Payment").

7.3     If a Class Member received more than one Eligible C Summons at the same date and time in a single Summons Incident, that Class Member may only recover a single time for the Summons Incident, and may not recover for each Eligible C Summons issued at the same date and time.  However, a Class Member who received more than one Eligible

19

C Summons in separate Summons Incidents, at different dates and/or times, may recover once for each Summons Incident.

B.    Claims Administrator's Duties

7.4      The Claims Administrator shall (1) transmit the Notice and Claim Forms, by the means approved by the Court, to Proposed Settlement Class Members; (2) establish a website and toll-free phone number where information about the Settlement will be available to Class Members and Class Members can ask, and receive responses to, questions; (3) publish notice in the publications and in the manner set forth in the Declaration of Tiffany Janowicz, Rust Consulting; (4) respond to questions from Proposed Settlement Class Members; (5) review and assess the validity of Claims submitted by Class Members; (6) perform a calculation of the Individual Settlement Benefits consistent with this Stipulation and Proposed Preliminary Approval Order; (7) provide information to the Parties' counsel about the Settlement Benefits Account, as provided herein; (8) arrange for and distribute checks containing Individual Settlement Payments to Class Members; (9) arrange for and distribute checks containing Service Award Payments to the Class Representatives; (10) arrange for reversion back to the City of any amounts from the Settlement Benefits that revert pursuant to the terms of this Proposed Preliminary Approval Order; (11) create a database of Class Members who have filed timely and valid claims; (12) create a database of Opt-Outs; (13) provide Class Counsel and Counsel for Defendants with monthly bills and a final accounting; and (14) perform any other duties necessary to fulfill the foregoing responsibilities and any other responsibilities set forth in this Stipulation and Proposed Preliminary Approval Order.

C.    Notice and Claim Forms

7.5    Within five (5) business days after the Preliminary Approval Date, or the date on which the Court unseals the information held by OCA and the NYPD regarding the Proposed Settlement Class Members, or within such other time period set by the Court, the City shall provide a copy of this Stipulation and Proposed Preliminary Approval Order or a separate Unsealing Order to the OCA and the NYPD. Within five (5) business days after receiving unsealed data from the OCA or the NYPD, the City shall provide to the Claims Administrator and Class Counsel the unsealed data as received from the OCA or the NYPD.

7.6    No later than twenty (20) business days after the date that the City provides the unsealed data, or within such other time period set by the Court, the Claims Administrator shall, by the means approved by the Court, transmit the Notice of Class Action Settlement and a Claim form (in the form attached hereto as Exhibit B or in such other form as may be approved by the Court), in substantively the form attached hereto as Exhibit A, or in such other form as may be approved by the Court, to the Proposed Settlement Class Members. The Parties intend to provide actual notice to each Proposed Settlement Class Member, to the extent practicable.

7.7    In order to provide the best notice practicable, the Claims Administrator will do the following before any mailing of the Notice and Claim Form: (1) run the list of all Proposed Settlement Class Members through the United States Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

21

7.8     If envelopes from the mailing of the Notice and Claim Form are returned with forwarding addresses, the Claims Administrator will re-mail the Notice and Claim Form to the new address within two weeks of receiving the returned envelope. In the event that a Notice of Class Action Settlement and Claim Form are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender", the Claims Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice and Claim Form within two weeks of receiving the newly ascertained address; if no updated address is obtained for that Class Member, the Notice of Class Action Settlement and Claim Form shall be sent again to the Class Member's last known address. With respect to envelopes marked "Return to Sender", the Claims Administrator will also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Class Members for the purpose of obtaining the Class Members' current addresses.

7.9     The Claims Administrator shall provide to Counsel for Defendants and Class Counsel, at least ten (10) business days prior to the Final Fairness Hearing, a list of Class Members for whom notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

7.10    Class Counsel shall provide the Court, at least five (5) calendar days prior to the Final Fairness Hearing, a declaration by the Claims Administrator of due diligence and proof of transmission, by whatever means have been approved by the Court, of the Notice and Claims forms.

D.      Submission of Claim Forms After Final Approval

7.11    All Class Members seeking payment pursuant to the settlement must make such a claim in writing using the Claim Form in the form attached as Exhibit B or such other form as may be approved by the Court. All Claim Forms must be signed by the Claimant. Each Class Member must submit his or her own completed Claim Form for each Eligible C Summons for which the Class Member seeks payment. All Claim Forms must be mailed to the Claims Administrator and postmarked by the claim filing deadline set by the Court, and to be set forth in the Notice and Claim Form, in order to be considered timely. In order for a Claim Form to be considered complete, all questions must be answered and all applicable blanks filled in in a manner legible to the Claims Administrator. Failure to file a timely and complete Claim Form by the deadline for submission of all Claim Forms, if not corrected within the remedial period set forth in Paragraph 7.14 below, shall bar the Class Member from receiving payment with respect to any summons for which a completed Claim Form has not been timely submitted.

7.12    Class Members who file a Claim Form must notify the Claims Administrator of any change of address. The Claims Administrator shall be available through a website and a toll-free phone line to respond to requests from Class Members for assistance in completing and filing Claim Forms.

7.13    No untimely filed and/or incomplete Claim Forms may be accepted by the Claims Administrator, except that (1) the Claims Administrator may extend the deadline for receipt of Claim Forms by up to ten (10) additional calendar days (but no more) where error or delay by United States Postal Service is established; and/or (2) the Claims Administrator may provide a one-time extension of the deadline for receipt of Claim Forms of up to thirty (30) additional calendar days upon good cause shown.

E.    Administrative Review of All Claims

7.14    The Claims Administrator shall conduct a review of all Claim Forms to determine whether the Claim Form is completed and has been timely submitted.  In the event that a Claim Form is timely, but is incomplete, the Claims Administrator shall provide a one-time twenty (20) calendar day remedial period in which a Claimant can rectify any errors in the Claim Form.

7.15    The Claims Administrator shall also conduct a review of each claim submitted, as well as data provided by the OCA and the City, in order to determine the eligibility of the claim for payment.  If the Claims Administrator rejects a claim as not meeting the terms or provisions of the Stipulation and Proposed Preliminary Approval Order, the Claims Administrator shall so notify the Claimant, Class Counsel, and Defense Counsel, in writing and specify the eligibility and/or entitlement criteria that the Claimant failed to satisfy.

7.16    The Claims Administrator shall, within 45 days of the deadline set by the Court for submission of Claim Forms (subject to any extensions of the submission deadline pursuant to this Stipulation and Proposed Preliminary Approval Order), complete its review and issue a final determination as to which Class Members, on a per Summons Incident basis, are entitled to receive payment pursuant to the settlement, and the amount to which each such Class Member is entitled.

F.    Objections

7.17    Proposed Settlement Class Member objections to this Stipulation and Proposed Preliminary Approval Order must be in writing, and must include a detailed description of the basis of the objection.

7.18    Objections must be filed with the Court, with copies served on the Claims Administrator, Class Counsel and Counsel for Defendants, within sixty (60) calendar days after the Notice is mailed by the Claims Administrator, or within such other time period, or pursuant to such other procedures, as may be set by the Court. Proposed Settlement Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Stipulation and Proposed Preliminary Approval Order.  Only Members of the Proposed Settlement Class who have not chosen to exclude themselves from the Class pursuant to Section G herein shall be entitled to object to this Stipulation and Proposed Preliminary Approval Order.

7.19    No Class Member may appear at the Final Fairness Hearing for the purpose of objecting to the Stipulation and Proposed Preliminary Approval Order without first having timely filed and served his or her objection(s) in writing.

7.20    Any lawyer intending to appear for a Class Member for the purpose of making objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to Counsel for the Parties by the objection deadline.

7.21    An objector may withdraw his or her objection at any time.

G.    Exclusions

7.22    Class Members may exclude themselves, or Opt-Out, of the Settlement. Any Class Member who wants to Opt-Out of the Settlement Class must file a timely request for exclusion pursuant to the provisions described in the Notice of Class Action Settlement, or pursuant to such other requirements as may be set by the Court. Such written request for exclusion must contain the name, address and telephone number of the person requesting

25

exclusion, or such other information as may be required by the Court. The exclusion request must be personally signed by the Proposed Settlement Class Member. No exclusion request may be made on behalf of a group of Proposed Settlement Class Members, unless permitted by the Court.   Unless otherwise determined by the Court, the postmark date of the mailing envelope shall be the exclusive means used to determine whether a request mailed for exclusion has been timely submitted. Any Class Member who timely submits such a request for exclusion shall be barred from participation in the Settlement, shall not receive any portion of the Settlement Benefits, and shall not be entitled to object to the Stipulation and Preliminary Approval Order. The Claims Administrator on a weekly basis shall provide Class Counsel and Defendants' Counsel with a copy of all requests for exclusion that are received.

7.23   Class Counsel shall file with the Court all timely requests for exclusion.

7.24   Any Class Member who does not timely file a request to Opt-Out of the Settlement shall be deemed part of the Settlement and be bound by this Stipulation and all subsequent proceedings, orders and judgments herein.

H.   Class Monetary Distribution Procedure

7.25   On a rolling basis to be completed no later than five (5) calendar days after the deadline for completion of the claims determination process described in Paragraph 7.16, the Claims Administrator shall provide the Class Counsel and Counsel for Defendants with a list of Eligible Claimants, and the amount to be paid to each such Eligible Claimant.

7.26   Every thirty (30) days after the Preliminary Approval Order, the Administrator shall provide the Counsel for Defendants and Class Counsel with a list of those persons who are preliminarily eligible so that the City may, on a rolling basis,

determine whether that person's award with need to be reduced due to New York City Child Support Liens and/or Medicare liens.

7.27   No later than thirty (30) calendar days after receiving the list of Eligible Claimants, as set forth in paragraph 7.24 above, Counsel for Defendants will provide the Claims Administrator and Class Counsel with a list of the Eligible Claimants against whom there are New York City Child Support and/or Medicare liens, and the amount of such lien(s). The amount allowing for New York City Child Support and/or Medicare liens will be deducted from the sum to which an Eligible Claimant is entitled. Prior to providing this list, the City shall send to each person owing New York City Child Support Liens and to Class Counsel a notice describing that they owe these liens and information on how to file a challenge regarding the deduction of the New York City Child Support Liens from the award. If the City later determines that the amount of the lien was incorrect, the City shall directly pay that person the amount that was incorrectly withheld from that person's Settlement Benefit.

7.28   No later than thirty (30) calendar days after Defendant the City of New York deposits the Settlement Benefits in an interest bearing account, as set forth in paragraph 5.1 above, the Claims Administrator shall cause to be mailed, via First Class mail, or by such other means as shall be determined by the Court, payment checks to the Class Members to whom a payment is due, after the deduction of any amounts due pursuant to New York City Child Support and/or Medicare liens, if applicable.

7.29   If a Class Member to whom a payment is due is deceased at the time of such distribution hereunder, the amount payable to such deceased Class Member shall be paid to his or her estate, provided that the estate provides an appropriate certification to the Claims Administrator.

27

7.30    All payment checks distributed by the Claims Administrator must indicate, in bold, words to the effect that "the check must be cashed within one (1) year or it will become void." The back of each check will contain a legend stating: "By negotiating this check and accepting payment I agree that I have waived and released the Released Parties from all Released Claims as defined in the Stipulation and Proposed Preliminary Approval Order and in the Notice in this matter. This Release is effective as of the Effective Date."

## VIII.    DUTIES OF CLASS COUNSEL PRIOR TO COURT APPROVAL

8.1    Promptly upon execution of this Stipulation and Proposed Preliminary Approval Order by Class Counsel and Counsel for Defendants, but by no later than ten (10) calendar days thereafter, Class Counsel shall apply to the Court for the entry of this Order:

(i)    Preliminarily approving the Stipulation and Proposed Preliminary Approval Order, as well as the payment of attorneys' fees and Costs, and Service Award Payments;

(ii)    Approving as to form and content the proposed Notice of Class Action Settlement;

(iii)    Approving as to form and content the proposed Claim Form;

(iv)    Directing the mailing of the Notice and Claim Form by first class mail to the Proposed Settlement Class Members;

(v)    Setting deadlines for objecting to the Stipulation and Proposed Preliminary Approval Order, for seeking exclusion from the Proposed Settlement Class, and for submission of Claim Forms; and,

(vi)    Scheduling a Final Fairness Hearing as soon as practicable on the question of whether the Settlement, attorneys' fees and Costs and Service Award Payments should be finally approved as fair, reasonable and adequate.

IX.    **DUTIES OF CLASS COUNSEL IN CONNECTION WITH FINAL COURT APPROVAL**

9.1    Following the Court's Order of Preliminary Approval, and no later than forty (40) days prior to the date set by the Court for the Final Approval Hearing, Class Counsel shall submit a motion for a Final Approval Order:

(i)    Granting final approval to the Stipulation and Proposed Preliminary Approval Order, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(ii)   Granting final approving of attorneys' fees and Costs, and Service Award Payments;

(iii)  Dismissing the Civil Action with prejudice; and

(iv)   Ordering that all materials containing Confidential or Highly Confidential Information pursuant to the Protective Order entered in the Civil Action shall be returned to the producing party or destroyed by the party to whom those materials were produced within one-hundred eighty (180) calendar days after the Effective Date, with the exception that the Parties may retain copies of their work product; copies of all filed documents (whether or not filed under seal or submitted to the Court without being officially filed); and materials necessary to oversee compliance with and implementation of this Stipulation and Proposed Preliminary Approval Order, except that, with respect to materials necessary to oversee such compliance and implementation, all documents and materials designated Highly Confidential shall be returned to Defendants or Defendants' Counsel, who shall retain and maintain that information in the form in which it is returned until 180 days after the Effective Date.

X.     **PARTIES' AUTHORITY**

10.1   The signatories hereby represent that they are fully authorized to enter into this Stipulation and Proposed Preliminary Approval Order and to bind the Parties and the Class Members to the terms and conditions hereof, subject to Court approval.

10.2   All of the Parties acknowledge that individual Class Members are entitled to consult an attorney at their own expense regarding their participation in the proposed Settlement and all terms of this Stipulation and Proposed Preliminary Approval Order,

including without limitation the Releases set forth herein. The Parties acknowledge that they have been represented by competent, experienced Counsel throughout all negotiations and mediation that preceded the execution of this Stipulation and Proposed Preliminary Approval Order, and this Stipulation and Proposed Preliminary Approval Order is made with the consent and advice of Counsel who have jointly prepared this Stipulation and Proposed Preliminary Approval Order.

10.3   All of the Parties acknowledge that they are participating voluntarily and knowingly in exchange for the consideration described herein. The Parties further acknowledge that they were provided with a reasonable period of time within which to consider this Stipulation and Proposed Preliminary Approval Order.

XI.    **MODIFICATION**

11.1   This Stipulation and Proposed Preliminary Approval Order and its attachments may not be terminated or substantively changed, altered or modified, except in writing by all Parties, and subject to Court approval.

XII.   **ENTIRE PROPOSED PRELIMINARY APPROVAL ORDER**

12.1   This Stipulation and Proposed Preliminary Approval Order and its exhibits and attachments, subject to Court approval, constitute the entire agreement among the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Stipulation and Proposed Preliminary Approval Order. In the event of any conflict between this Stipulation and Proposed Preliminary Approval Order and any other document or information (other than an order of the Court), the Parties intend that this Stipulation and Proposed Preliminary Approval Order shall be controlling.

## XIII.    INTERPRETATION

13.1    This Stipulation and Proposed Preliminary Approval Order shall be construed as a whole according to its fair meaning, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Stipulation and Proposed Preliminary Approval Order or any specific term or condition thereof.

## XIV.    CHOICE OF LAW AND JURISDICTION

14.1    This Stipulation and Proposed Preliminary Approval Order and the exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Parties to this Stipulation and Proposed Preliminary Approval Order shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, without giving effect to that State's choice-of-law principles.

14.2    The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain jurisdiction of the implementation and enforcement of the terms of this Stipulation and Proposed Preliminary Approval Order, and all Parties hereto and their counsel shall submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and Proposed Preliminary Approval Order.

## XV.  COUNTERPARTS

15.1    This Stipulation and Proposed Preliminary Approval Order may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Stipulation and Proposed Preliminary Approval Order, which shall be binding upon and effective as to all Parties and the Class.

31

## XVI. <u>VOIDING THE STIPULATION AND PROPOSED PRELIMINARY APPROVAL ORDER</u>

16.1    In the event this Stipulation and Proposed Preliminary Approval Order, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason, this Stipulation and Proposed Preliminary Approval Order shall be null and void in its entirety, unless expressly agreed in writing by all Parties. In that event, the Parties and the Class shall be deemed to have returned to the status quo in the Civil Action as it was immediately prior to the execution of this Stipulation and Proposed Preliminary Approval Order.

## XVII. <u>FINAL FAIRNESS HEARING</u>

17.1    A Final Fairness Hearing shall be held at a date and time to be set by the Court, at which time the Court will hear argument as to whether the Court should approve the settlement, attorneys' fees, costs, and Service Award Payments.

IN WITNESS WHEREOF, the undersigned have duly executed this Stipulation and Proposed Preliminary Approval Order as of the date indicated below:

Dated: January 23, 2017

| Cohen & Fitch, LLP | Jon L. Norinsberg PLLC | Quinn Emanuel Urquhart & Sullivan LLP |
|---|---|---|
| By: | By: | By: |
| Gerald M. Cohen | Jon L. Norinsberg | Stephen Neuwirth |
| Joshua P. Fitch | 225 Broadway, Suite 2700 | Elinor C. Sutton |
| Cohen & Fitch, LLP | New York, NY 10007 | 51 Madison Ave., 22nd Floor |
| 233 Broadway, Suite 1800 | (212) 791-5396 | New York, NY 10010 |
| New York, NY 10279 | | (212) 849-7325 |
| (212) 374-9115 | | |

Co-Lead Class Counsel

ZACHARY W. CARTER
Corporation Counsel of
The City of New York

By:
Qiana Smith-Williams
Rachel Seligman Weiss
Suzanna Publicker Mettham
Daniel Passeser
100 Church Street
New York, NY 10007
(212) 356-2360

SO ORDERED:

Robert W. Sweet, U.S.D.J.